**Opinion issued July 14, 2026**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-25-00920-CV**

———————————

**PRASLA PROPERTY, INC., NAVROZ K. PRASLA, MEDIA FILMS
CRAFT, INC., AND NAVROZMEDIANETWORK, INC., APPELLANTS
V.
SPARK WEALTH INVESTMENTS, LLC, APPELLEE**

**On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Case No. 24-DCV-319828**

## OPINION DISSENTING TO DENIAL OF EN BANC RECONSIDERATION

In appellate law, as in economics, the unseen consequences of decisions typically outweigh those consequences that are seen. That's certainly true for the Court's *sua sponte* decision to pull the appellants' fat out of the fire. I join Chief

Justice Adams's opinion, arguing that the Court did not have authority to take this action, but I write separately to highlight the unseen consequences of the Court's decision.

To be fair, I'll start with the consequences we see. The appellants are facing a roughly $7 million judgment, and now they get to appeal it. According to the appellants' untimely motion for rehearing, they always intended to appeal and their failure to meet numerous mandatory appellate deadlines was due to innocent mistakes by their attorneys. If one believes this explanation,[*] everyone sees a benevolent court aiding a sympathetic party.

Less visible are the appellees. They sued the appellants for defaulting on a promissory note, litigated the case through trial, won a judgment, and then watched as the appellants failed to meet the necessary deadlines for appeal. Before this Court *sua sponte* rescued the appellants, the appellees should have had complete confidence their win was final. From their perspective, reinstating the appeal is not

---

[*] It's hard for an appellate court to make credibility determinations because we generally see only written filings. We often get requests for briefing extensions based on purported health maladies, family deaths, or professional obligations, and we ordinarily accept these statements by officers of the court without investigation. But briefing extensions are routine in Texas appellate courts and everyone understands briefing deadlines are flexible. Before this case, the consensus was that rehearing deadlines, once missed, were not flexible. Accepting as fact statements of intent about why an appealing party blew through multiple mandatory deadlines is farther than I would let my ability to discern credibility from written filings take me.

obviously a positive outcome. But they're not movants giving us a sympathetic story, so they get less attention.

Then come the unseen consequences. First is the effect of the Court's decision on future litigants. In his concurring opinion, Justice Johnson says that "No one should construe our order to promote defiance of the Rules," but I don't know any other way to construe this order. The appellants defied the rules, they wrote a semi-sympathetic motion, then this Court saved them from the obvious and direct consequences of defying the rules.

A middle school teacher who accepted every "dog ate my homework" excuse, would soon discover that paper and #2 graphite were the primary canine diet in her district. Having accepted "Appellants were unfamiliar with the appeals process" (Appellants' Motion for Rehearing at 1) as an excuse for failing to meet mandatory deadlines, we're about to discover that familiarity with the appellate process is less widespread than previously believed. If messing up is its own justification for getting a do-over, we've reduced the incentive for lawyers to put in the work to learn and follow the rules.

Our failure to enforce procedural rules increases the incentive for parties to test the boundaries. Before this case, most lawyers wouldn't have filed an obviously untimely motion for rehearing, but now we've established such a motion can work. Why shouldn't parties try other procedurally irregular filings requesting relief that

is facially barred by the Rules of Appellate Procedure? Increasingly defective cases will get hearings on the merits, and even the most defective cases will now take time to resolve as we examine whether the defaulting parties merit our grace.

Which gets to the unseen victims of the sort of decision-making behind the Court's order, the litigants who follow the rules. The resources of the judicial system—its judges and staff—are finite. The more time we spend finding ways to save appellants who have procedurally defaulted, the less time we spend on cases where the parties have followed the rules. Those who follow the rules become the forgotten man in a transaction: We take time away from their cases—in ways that are unseen and unquantifiable—and give it to a defaulting party we see and find sympathetic. This transaction makes the court feel good about itself. It makes the rule-breaking party feel good when its case isn't dismissed. And the rule-following parties aren't in front of the court at the time so no one notices them.

Who are these unseen victims? The wrongfully-convicted criminal defendant waiting in prison for a reversal. The large corporations that hired expensive lawyers to litigate a legal dispute about enormous sums of money. The mandamus relator fighting a rogue trial judge. The rape victim waiting on her assailant's righteous conviction to be affirmed. The personal injury plaintiff who won a justified verdict and needs an affirmance to get the money to pay for his needs.

Instead of working on those cases, we're reaching out to help parties whose central claim on rehearing was that they wanted to pursue their appeal so badly that after we dismissed for want of prosecution it took them forty-two days to contact us.

When parties procedurally default in such a blatant manner as the appellants did here, we should dismiss the case and spend our limited resources on cases where the parties have followed the rules. Because the Court chooses instead to devote our resources to a procedurally defaulted case, I respectfully dissent.

Clint Morgan
Justice

En Banc Court consists of Chief Justice Adams and Justices Rivas-Molloy, Guerra, Gunn, Caughey, Guiney, Mogan, Johnson, and Dokupil.

Justice Morgan, dissenting to denial of en banc reconsideration, joined by Chief Justice Adams and Justice Dokupil.